IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GOVERNMENT OF PUERTO RICO,

**Plaintiff,**

v.

CAREMARKPCS HEALTH, LLC, *et al.*,

**Defendants.**

**CIVIL NO.** 25-1692 (JAG)

**MEMORANDUM AND ORDER**

GARCIA-GREGORY, D.J.

Pending before the Court are the Parties' Objections to the Report and Recommendation ("R&R") issued by U.S. Magistrate Judge Héctor L. Ramos-Vega. *See* Docket Nos. 89; 92; 93; 94; 95; 98-1; 100-1; 102. After considering the Parties' objections and conducting a *de novo* review of the portions to which specific objections were made, the Court hereby **ADOPTS IN PART** and **REJECTS IN PART** the R&R.

Courts must conduct a *de novo* review of such parts of an R&R to which specific, written objections have been made. Fed. R. Civ. P. 72(b). "Local Rule 72(d) further provides that such objections 'shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection.'" *Velez-Padro v. Thermo King de P.R., Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) (quoting L. Cv. R. 72(d)). Upon review of the objections properly made, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. L. Cv. R. 72(d).

## I. Motions to Dismiss for Lack of Personal Jurisdiction

The Magistrate Judge recommended dismissal of the claims asserted against co-Defendants Emisar and Ascent for lack of personal jurisdiction. Docket No. 89 at 13-20. Plaintiff's only objection as to this issue was that "Puerto Rico does not agree with the Magistrate Judge's recommendation that its claims against Ascent Health Services LLC ("Ascent") and Emisar Pharma Services LLC ("Emisar") be dismissed for want of personal jurisdiction pursuant to Rule 12(b)(2) for the reasons stated in its underlying briefs." Docket No. 92 at 2. This is not a proper objection. *See Betancourt v. Ace Ins. Co. of P.R.*, 313 F. Supp. 2d 32, 34 (D.P.R. 2004) (noting that a party "may not simply restate the arguments that the Magistrate Judge considered."); *Gonzalez-Ramos v. Empresas Berrios, Inc.*, 360 F. Supp. 2d 373, 376 (D.P.R. 2005) ("The objections presented, however, are not to be construed as a second opportunity to present the arguments already considered by the Magistrate Judge."). Therefore, the R&R's recommendation of dismissal for lack of personal jurisdiction is unopposed and the Court finds it is supported by both the record and the law. Accordingly, the Court **ADOPTS** the Magistrate Judge's recommendation to dismiss the claims against co-Defendants Ascent and Emisar for lack of personal jurisdiction. Ascent's Motion to Dismiss, Docket No. 30, and Emisar's Motion to Dismiss, Docket No. 31, are hereby **GRANTED**. Partial Judgment shall be entered accordingly.

## II. Motion to Dismiss for Failure to State a Claim

The Magistrate Judge recommended dismissal based on improper claim splitting, Docket No. 89 at 21-27, but rejected Defendants' additional grounds for dismissal: "that the Antitrust Act's safe-harbor provision bars the Government from challenging Defendants['] business practices, that the Government cannot pursue monetary relief, [] that Plaintiff's claims are time-barred[,

and] that dismissal on the merits is appropriate due to the Government's failure to sufficiently plead a claim upon which relief can be granted." *Id.* at 21. The Court shall address each issue in turn

**A. Claim-Splitting**

The Government objects to the R&R's recommendation of dismissal based on claim-splitting. Docket No. 92. In relevant part, the Government contends that the claims in this case are not sufficiently identical to the claims asserted in the insulin MDL case and that the R&R ignored equitable considerations when recommending dismissal. Docket No. 92 at 8. The Court agrees.

First, *res judicata* is inapplicable because no final judgment on the merits has been entered in the insulin litigation. *See Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). While "claim splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation[,] claim splitting is *more concerned* with the district court's *comprehensive management of its docket*." *Id.* (cleaned up) (emphasis added).

"[T]he test for claim splitting is . . . whether the first suit, assuming it were final, would preclude the second suit." *Id.* Specifically,

> When the pendency of a [previously filed] suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same.

*Id.* at 1217 (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)). While judgment in the insulin litigation could trigger issue preclusion in this case, it would not preclude all claims.[1] The parties are not identical in both cases. Pharmacy benefit managers ("PBMs") are included in both actions, but the insulin case includes drug manufacturers not included here, and this case includes group purchasing organizations ("GPOs"), which were not included in the first action. The GPO Defendants have no connection to the manufacturers in the insulin case and, thus, the Court cannot find that these parties represent the same interests in both cases.

While both cases allege a scheme to artificially inflate the prices of prescription medications, the instant suit covers significantly more ground and, thus, a final judgment on the insulin-related claims would not preclude the claims asserted here. And while there will undoubtedly be some overlap in the evidence, discovery in the instant action will have a significantly wider scope and require evidence that will not be implicated in the insulin case, namely evidence as to the GPO Defendants.[2] This is what the Court found when denying the

---

[1] "Under Puerto Rico's res judicata scheme, claim preclusion binds parties from litigating or relitigating any claim that was or could have been litigated in a prior adjudication and prevents claim splitting; issue preclusion, on the other hand, forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." *Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 12 (1st Cir. 2010) (cleaned up).

[2] The Judicial Panel of Multidistrict Litigation ("JPML") overseeing the insulin cases reached a similar conclusion when deciding to exclude the Hawai'i case:

> [T]he State of Hawai'i action alleges a scheme to inflate the list price of all "brandname prescription drugs" – a substantially larger universe of drugs, manufacturers, and business practices than those at issue in the MDL. Considering the differences between this action and the MDL, transfer would not serve the just and efficient conduct of the litigation. *In re Insulin Pricing Litig.*, MDL 3080, Order Denying Transfer at 1, ECF 259 (J.P.M.L. Apr. 11, 2024); *see also id.* at 2 ("These are not 'minor factual differences,' as movants argue; rather, State of Hawai'i involves fundamentally different factual questions about pricing across the entire brand-name prescription drug industry, rather than being limited to diabetes drugs.").

Government's motion for leave to amend the complaint in the insulin case. Civ. No. 23-1127, Docket No. 147 ("[T]he proposed amendments significantly expand the claims asserted in this action and would, thus, materially alter the nature of this litigation. This would unduly prejudice Defendants by drastically expanding the scope of the litigation and requiring Defendants to litigate the claims related to insulin prices in 2 different forums.").[3] There, this Court specified that it "denied leave to amend the complaint as untimely. It did not adjudicate or comment on the merits of the claims in the proposed Second Amended Complaint and the Order was not a final judgment on any claim." Civ. No. 23-1127, Docket No. 163. Thus, this Court's denial of the leave to amend was not intended to preclude a separate action encompassing medications other than insulin.

"The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (cleaned up). The matters raised in this case have a significant impact on the health and wellbeing of thousands of people in Puerto Rico, and these important equitable considerations convince this Court that the Government should be allowed to pursue the claims asserted in the instant action. In sum, at this juncture, procedural convenience should yield to substantial public policy and equitable considerations, without prejudice to the filing of subsequent dispositive motions after discovery yields a properly developed record. Moreover, trying the insulin claims separately as a

---

Docket No. 92 at 9.

[3] Defendants in the insulin litigation agreed that granting leave to amend the complaint to include the claims asserted here "would greatly expand the scope and nature of the claims." Civ. No. 23-1127, Docket No. 143 at 14.

multi-district litigation conserves judicial resources and promotes the efficient administration of justice. Because "[a] dismissal on [the] ground [of claim splitting] has been viewed as a matter of docket management, reviewed for abuse of discretion," 18 WRIGHT AND MILLER'S FEDERAL PRACTICE & PROCEDURE § 4406 (3d ed. 2026), the Court finds that this case is not barred by the doctrine of claim-splitting.[4]

### B. Safe-Harbor Provisions

Defendants challenge the R&R's conclusion that the Puerto Rico Antitrust Act's safe harbor provision is inapplicable. Docket No. 93 at 9-12. However, Defendants' objection simply rehashes the arguments put forth in their Motion to Dismiss, which were already considered and rejected by the Magistrate Judge. *See Betancourt*, 313 F. Supp. 2d at 34; *Gonzalez-Ramos*, 360 F. Supp. 2d at 376. More importantly, the Court agrees with the R&R's analysis. Section 9045 of the Prescription Drug Management Act ("PDMA") requires covered entities to develop committees, processes, and procedures for the development and disclosure of formulary decisions. P.R. LAWS ANN. tit. 26, § 9045. However, the PDMA does not "apply to prescription drugs that are categorically or contractually excluded from a covered person or enrollee's health plan," *id.* § 9044; nor does it place substantive limits or requirements on pricing or the use of rebates as a driver of formulary decisions. As such, the Court rejects this objection and **ADOPTS** the R&R's finding that this provision is inapplicable to the case at hand.

---

[4] It is also worth noting the Government's argument that "the equities have shifted entirely between the motions for leave to amend and the present motion" because "it is now Defendants who are playing games with this Court: after having 'strenuously opposed' consolidated litigation by opposing Puerto Rico's motions for leave to amend, they now contend that these same claims must be dismissed because they were not included in the prior lawsuit." Docket No. 92 at 14.

### C. Monetary Relief[5]

Defendants also contend that the Antitrust Act's statutory scheme does not allow the Government to seek monetary relief.[6] Docket No. 93 at 12-15. This argument is foreclosed by the language of the statute. Section 269 of the Puerto Rico Antitrust Act provides as follows:

> The Court of First Instance is hereby vested with jurisdiction to prevent, prohibit, enjoin *and punish violations* of this chapter, and it shall be the duty of the Secretary of Justice to institute proceedings for injunctions *or any other proceeding to prevent, prohibit, enjoin and punish such violations, and to obtain such other or further relief as may be appropriate*.

P.R. LAWS ANN. tit. 10, § 269 (emphasis added). This provision clearly grants the power to punish violations of the Act, institute proceedings *other than injunction proceedings*, and "obtain such other or further relief as may be appropriate." *Id*. Accepting Defendants' arguments would render these portions superfluous. Defendants' "reading is thus at odds with one of the most basic interpretive canons, that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up); *Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("When a statutory construction thus 'render[s] an entire subparagraph meaningless,' this Court has noted, the canon against surplusage applies with special force.") (citation omitted). As such, the Court rejects this objection and **ADOPTS** the R&R's determinations as to this issue.

---

[5] Defendants argue that the R&R relied on non-binding authority when finding that monetary relief was available. Docket No. 93 at 16-17. Yet Defendants' cite a plethora of unpublished and/or non-binding cases to support their objections.

[6] Defendants cite *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 593 U.S. 67, 71-74 (2021), to support their position. However, *AMG Cap. Mgmt., LLC* dealt with the Federal Trade Commission Act and, thus, is not dispositive of the proper interpretation of the explicit language in the Puerto Rico Antitrust Act.

**D. Indirect Purchaser Rule**

Defendants also challenge the R&R's finding that the indirect purchaser rule does not bar recovery. Docket No. 93 at 17-20. Defendants claim that "the distinction the R&R draws between Sections 258 and 259(a) finds no support in the Antitrust Act's text, structure, or interpretation." *Id*. at 18. Yet the same is true about Defendants—who carry the burden of showing dismissal is warranted—in that they do not put forth any legal authority showing that the indirect-purchaser rule applies to the relevant provision of the Antitrust Act.[7] Section 258 establishes criminal liability for unreasonable restraint of trade or commerce. P.R. LAWS ANN. tit. 10, § 258. Section 259, on the other hand, addresses "[u]nfair methods of competition, and unfair or deceptive acts or practices in trade or commerce," *id.* § 259(a); and only provides for civil liability, *id.* § 259(i). Thus, considering that Sections 258 and 259(a) target different conduct and provide different forms of relief, the Court can assume, absent authority to the contrary, that jurisprudence as to one section does not necessarily apply to the other section. This is further supported by the fact that the statute also draws a distinction between the two: Section 268(a), which provides a private cause of action, expressly excludes claims under Section 259. Moreover, "[a]lthough federal jurisprudence has implied special standing requirements into private antitrust actions, Puerto Rico explicitly rejects any such limitations. Because Puerto Rico liberally construes its standing requirements in private antitrust cases, it is immaterial whether Plaintiffs are direct or

---

[7] Defendants claim that "[f]ollowing analogous federal law, courts routinely hold that the indirect-purchaser rule applies to claims under the Antitrust Act." Docket No. 93 at 17. Yet the only support cited for this proposition is a non-binding, unpublished case from another district. Defendants then cite several more unpublished, non-binding cases. *Id.* at 18-20.

indirect purchasers." *Rivera-Muniz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010) (cleaned up). As such, the Court rejects this objection and **ADOPTS** the R&R as to this issue.

**E. Statute of Limitations**

Defendants also disagree with the Magistrate Judge's finding that the Government's claims are timely. Docket No. 93 at 20-22. "Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998). This is not the case here. Taking all reasonable inferences in favor of Plaintiff, the Court finds that the Complaint adequately pleads repeated, ongoing conduct and, thus, the continuing violation doctrine applies at this stage. Accordingly, the Court rejects this objection and **ADOPTS** the R&R as to this issue.

**F. Failure to State a Claim**

Defendants also challenge the Magistrate Judge's finding that the Government adequately pled claims under Section 259 as to all counts. Docket No. 93 at 22-29. The Court finds that Defendants' objections amount to mere disagreement with the Magistrate Judge's analysis. *See Monfort-Rodriguez v. Hernandez*, 286 F. Supp. 2d 119, 121 (D.P.R. 2003) ("In their objections, . . . plaintiffs disagree with the Magistrate's factual findings but offer nothing to bolster their objections except their own interpretation of the evidence . . . [nor do they] offer any new substantive arguments in favor of their position."). The Court shall address each count in turn.

**1. Count One: Deceptive Acts and Practices**

Defendants argue that "the R&R found materiality adequately pleaded without identifying *any* consumer decision that the challenged statements could plausibly influence."

Docket No. 93 at 23. However, taking all reasonable inferences in favor of the Government, the Court finds that the Complaint adequately alleges consumer decisions that could be plausibly influenced by Defendants' statements. For example, the Complaint alleges:

> [C]onsumers are concerned about the safety and efficacy of prescription drugs. Pricing and access to prescription drugs are also key concerns to consumers . . . . [A] health plan may consider complaints made by aggrieved consumers in determining whether to select or retain a particular PBM . . . . In addition, some consumers may be able to change PBMs by selecting a different health plan with a different PBM . . . . Defendants' deceptive acts and practices are also likely to affect consumers' conduct regarding their services. For example, an insured parent whose allergic child's EpiPen is no longer covered or preferred by Defendants will have to find a different drug for her child. A cancer patient who is required to transition to a different chemotherapy drug because of Defendants' formulary practices will certainly find that information material. For all these consumers, Defendants' deceptive acts and practices were material because they affected consumers' choice of, or conduct regarding, Defendants' services. Since Defendants' formulary and rebate practices significantly inflate the price of brand-name drugs and consumers' out-of-pocket costs, some consumers will decide to forego using their prescription drug benefits altogether because paying cash is cheaper. For example, a consumer taking a drug her PBM designated as "specialty," may be better off purchasing the drug with cash from a pharmacy not affiliated with her PBM that offers a more competitive price. Alternatively, a consumer may choose to pay cash and utilize publicly available drug coupons offered by drug manufacturers or GoodRx.

Docket No. 2-1 at 47-48. This is enough at this stage. Moreover, the fact that Defendants create advertisements and materials directed at consumers further supports the reasonable inference that the information contained therein is material to consumers. As the Supreme Court has said,

> Most businesses—even regulated monopolies—are unlikely to underwrite promotional advertising that is of no interest or use to consumers. Indeed, a monopoly enterprise legitimately may wish to inform the public that it has developed new services or terms of doing business. A consumer may need information to aid his decision whether or not to use the monopoly service at all, or how much of the service he should purchase. In the absence of factors

> that would distort the decision to advertise, we may assume that the willingness of a business to promote its products reflects a belief that consumers are interested in the advertising.

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 567-68 (1980).

Defendant next argues that the R&R failed to correctly apply the standard for "puffery." Docket No. 93 at 24. The Court disagrees. The representations alleged are not mere puffery because they are specific and measurable and, thus, can be proven or disproven. *See* Docket No. 89 at 49-51. Moreover, Defendants' objection as to this issue merely repeats arguments already considered and rejected by the Magistrate Judge, and the objection "offer[s] nothing to bolster their objections except their own interpretation of the evidence." *Rodriguez*, 286 F. Supp. 2d at 121.

As such, the Court rejects this objection and **ADOPTS** the R&R's determination that the Government adequately pled Count I.

**2. Count Two: Unfair Acts and Practices**

Defendants also contend that the R&R failed to identify factual allegations plausibly connecting the challenged PBM conduct to the substantial consumer injury. Docket No. 93 at 25. The relevant inquiry is whether the Complaint contained sufficient factual allegations. The Complaint repeatedly alleges that the PBM "engag[ed] in a scheme to artificially inflate WAC prices for brand-name prescriptions drugs to allow Defendants to extract higher fees," which in turn harms consumers. Docket No. 2-1 at 62. For example, the Complaint alleges *inter alia*:

- "The PBM Defendants began increasingly exerting their leverage in 2012 by excluding drugs from certain therapeutic classes from their formularies to intensify the rebates manufacturers offered them. The threat of exclusion fundamentally changed drug pricing. Rebates went from modest discounts to steep payments that manufacturers were all but forced to make because not paying Defendants could doom a drug's chance of success." *Id.* at 27.

- "Defendants' decisions about formulary coverage for drugs is largely driven by their own profits and have the effect of sometimes excluding the most inexpensive and even the most effective and safest treatments (and driving up drug prices)." *Id.*

- "Since the PBM Defendants began excluding drugs from their formularies, the monetary value of rebates has skyrocketed." *Id.* at 29.

- "In addition to excluding drugs, Defendants manipulate the formulary tiered system by giving preferential treatment to higher cost drugs for their own financial gain." *Id.* at 31.

- "[T]he PBM Defendants know their formulary-enabled rebates have the effect of driving up drug prices." *Id.* at 32.

- "Defendants' lack of transparency allows them to profit from secret, undisclosed fees that drive up the cost of drugs." *Id.* at 38.

- "Defendants' rebate and formulary practices harm a large number of people and raise a significant risk of concrete harm by: (1) increasing consumers' out-of-pocket costs; (2) restricting consumers' access to appropriate and effective prescription drugs; and (3) Defendants retaining a significant portion of rebates and other fees thereby shrinking any potential 'savings' consumers and or health insurance plans might otherwise provide." *Id.* at 40.

- "Defendants' conduct in causing increases in WAC prices increases out-of-pocket costs for uninsured consumers and insured consumers with coinsurance and high-deductible plans who are in the deductible phase because their costs are directly tied to the WAC price. This cost increase is not speculative or theoretical; it is guaranteed, because of the connection between consumers' cost-share payment and the WAC price. Thus, when WAC increases, consumers' out-of-pocket costs will increase." *Id.*

- "Beyond pricing, drug exclusions cause harm and/or raise a significant risk of concrete harm by forcing non-medical switching (altering a consumer's drug therapy for reasons other than a drug's efficacy, side effects, or clinical outcome)." *Id.* at 42.

This is sufficient to survive the motion to dismiss stage.

Moreover, Defendants' objection regarding the R&R's treatment of countervailing benefits, Docket No. 93 at 26-27, must also be rejected. The Government adequately pled that the

harm to consumers caused by Defendants' conduct is not outweighed by its benefits. The Complaint states:

> Defendants' rebate and formulary practices harm a large number of people and raise a significant risk of concrete harm by: (I) increasing consumers' out-of-pocket costs; (2) restricting consumers' access to appropriate and effective prescription drugs; and (3) Defendants retaining a significant portion of rebates and other fees thereby shrinking any potential 'savings' consumers and or health insurance plans might otherwise provide. They are not outweighed by any countervailing benefits to consumers or to competition. In fact, as explained below, Defendants' rebate and formulary practices tend to negatively affect competitive conditions in the prescription drug market."

Docket No. 2-1 at 40. This is sufficient at this stage. Moreover, this test requires a balancing of the evidence, which is not appropriate at this stage.

As such, the Court rejects this objection and **ADOPTS** the R&R's determination that the Government adequately pled Count II.

### 3. Count Three: Unfair Methods of Competition

Finally, Defendants challenge the R&R's conclusion that the Government stated a valid claim under Count III, claiming that "the R&R never identified any factual allegations plausibly suggesting that any of those practices cause harm to the competitive process rather than particular market participants." Docket No. 93 at 27. However, the Complaint includes several allegations addressing this issue. For example,

- "Researchers from the University of Southern California found that consumers with coinsurance in Medicare Part D plans had substantially higher out-of-pocket costs for drugs in concentrated markets where the demand for rebates is the highest. In other words, paradoxically, more competitors in the market caused at least certain consumers to pay higher costs, which is contrary to how competitive markets typically work. This can be attributed to the fact that Defendants leverage the availability of competitor drugs to demand higher rebates to give preferential treatment to one manufacturer's product and exclude others from their formularies." Docket No. 2-1 at 40-41.

- "Defendants engage in unfair methods of competition when giving preferential formulary treatment to drugs with the highest rebates when there are multiple drugs in a therapeutic class, which tends to negatively affect competitive conditions among drug manufacturers to the detriment of consumers." *Id.* at 48.[8]

- "Often, Defendants put their thumb on the scale in favor of drugs with much higher WAC (list) prices, undeniably for their own financial benefit, and against the interests of their health benefit plan clients and health benefit plan members, giving favored status to drugs that come with higher rebates while simultaneously freezing out drugs with considerably lower WAC prices (often biosimilars or generic drugs), thereby causing an artificial distortion of the normal competitive dynamics among drug manufacturers." *Id.* at 49.

- "[T]he PBM Defendants own or are otherwise affiliated with various pharmacies. This means the PBM Defendants are in competition with many of the non-affiliated pharmacies they contract with as network pharmacies . . . . the PBM Defendants have steered consumers to their own pharmacies or offered higher payments to their own pharmacies, at the expense of independent pharmacies that depend on access to their networks to remain afloat . . . . the PBM Defendants have abused their market power by forcing unfair contractual terms on independent pharmacies that tend to negatively affect competitive conditions in the pharmacy market and negatively impact consumers." *Id.* at 51-52.

These allegations make out a plausible claim for relief. As such, the Court rejects this objection and **ADOPTS** the R&R's determination that the Government adequately pled Count III.

## CONCLUSION

For the aforementioned reasons, the Court **ADOPTS** the R&R on all issues except the claim-splitting analysis, which the Court rejects. Accordingly, Ascent's Motion to Dismiss, Docket No. 30, and Emisar's Motion to Dismiss, Docket No. 31, are hereby **GRANTED**. Partial Judgment shall be entered accordingly. Defendants' Motion to Dismiss for Failure to State a Claim, Docket No. 34, is hereby **DENIED**.

---

[8] The Complaint then uses the treatment of biosimilars to illustrate the alleged harm to competition. Docket No. 2-1 at 49.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Wednesday, September 30, 2026.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge